**IN THE COURT OF APPEALS OF IOWA**

No. 21-1828
Filed November 2, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BRIANA NICOLE JENKINS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Christopher Kemp
(plea), Brendan E. Greiner (initial sentencing hearing), and Gregory D. Brandt (final
sentencing hearing), District Associate Judges.

Claiming a procedurally-defective sentencing process occurred, the
defendant appeals requesting her convictions be vacated. **APPEAL DISMISSED.**

Erin Patrick Lyons of Lyons Law Firm, PLC, Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller (until withdrawal)
and Benjamin Parrott, Assistant Attorneys General, for appellee.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

After being charged with five counts of violation of a custodial order,[1] Briana Jenkins signed and filed a petition to plead guilty in April 2021. In that filing, she agreed to plead guilty to one of the counts and enter an *Alford* plea[2] to another, in exchange for dismissing the three other counts. The agreement also framed the sentencing terms. Now, Jenkins challenges the sentencing process following acceptance of the plea agreement and argues the convictions should be vacated so she can withdraw her guilty pleas. Her focus is on the sentencing process and that it did not follow the mandatory parameters of Iowa Rule of Criminal Procedure 2.10. But Jenkins also asserts she should be allowed to withdraw her guilty plea "following its *de facto* rejection." Because we lack jurisdiction to resolve this matter, we dismiss Jenkins's appeal.

**Background Facts and Proceedings.**

In the petition to plead guilty, the plea agreement was detailed as:

> I will enter an *Alford* plea to Count IV; guilty plea to Count V; Minimum fines: both to run concurrent with each other and to the pending appeal in Iowa Supreme Court No. 20-1602; the no-contact order may be modified by the Dallas County court in DRCV 042150; Counts 1–3 will be dismissed; and, until such modification, if any, the no contact order will remain in effect. This agreement also provides

---

[1] Under Iowa Code section 710.6(2) (2020), a violation of a custodial order occurs when

> [a] parent of a child living apart from the other parent . . . conceals that child or causes that child's whereabouts to be unknown to a parent with visitation rights or parental time in violation of a court order granting visitation rights or parental time . . . without the other parent's consent.

This offense is a serious misdemeanor. Iowa Code § 710.6(2).

[2] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (holding a defendant can plead guilty to a crime without admitting to the underlying facts that establish the crime).

that the [S]tate is not bound by the agreement if I commit a new crime or violate a court order before sentencing.

The Court HAS AGREED TO BE BOUND by the plea agreement, and it is understood that if the Court does not accept this plea agreement I have the right to withdraw these pleas and proceed to trial.

Once Jenkins filed her plea petition, the court entered an order accepting the plea and setting sentencing. The order followed the plea agreement terms Jenkins detailed in her filing, accepting her guilty plea to count V and her *Alford* plea to count VI. At the July sentencing hearing, a judge different from the plea court judge presided. Issues arose that resulted in the sentencing court continuing the hearing "to allow the parties to brief . . . the issue about the plea." The issues raised at sentencing caused Jenkins to terminate her relationship with her then-counsel. In his motion to withdraw, Jenkins's then-counsel noted

[t]hose issues include but are not limited to whether formal [Iowa Rule of Criminal Procedure 2.10] approval of the plea agreement was required or not; and detrimental reliance by Ms. Jenkins on the plea agreement codified in the plea agreement and outlined in emails that will be filed at a later time between the parties as well as the trial court previously.

The sentencing court raised a concern over whether the plea court was required to treat the plea as having been made under rule 2.10. The sentencing court referenced "paragraph number 2 of page 2 of that plea petition, [which] states specifically, 'The Court has agreed to be bound by the plea agreement, and it is understood if the Court does not accept this plea agreement, you have the right to withdraw these pleas and proceed to trial.'" The court then asked Jenkins's counsel, "[D]id you inform [the plea court] this was going to be a 2.10 plea?" Jenkins's counsel stated, "It was my understanding it was going to be—that this was going to be a bound plea agreement" and "the [plea court] was accepting this

deal." Yet Jenkins's counsel told the sentencing court, "I didn't use the words '2.10,' your honor." When asked about this concern, the State commented "I have emails between [both counsel and the court] that, I guess, would support—would tend to support the position there was no indication that it was a 2.10 plea." As the State points out in its appellate brief, the order accepting the plea in no way indicated that the court agreed to be bound by the agreement and the only persons who signed the petition to plead guilty were Jenkins and her then-counsel. But the sentencing court felt the parties should brief the concerns over the plea acceptance before sentencing could take place.

After obtaining new counsel in August, Jenkins attended a second, final sentencing hearing held in November 2021 before a judge different than either the plea or initial sentencing proceedings. Jenkins's new counsel confirmed:

> So I was appointed after the plea was entered in this case. The prosecutor was generous in kind of informing me about the context of the case, and he pointed me to a particular transcript that I had requested on my client's behalf just to kind of get up to speed on the case. That was a transcript from a July hearing in front of [the initial sentencing judge]. That was reported by [a court reporter[3]].
> We had previously moved to continue this sentencing hearing in SRCR342701 to review that transcript to kind of understand the context of the case. Ultimately, it was my opinion that review of the of that transcript wouldn't really have any impact on the outcome because the State was willing to abide by the terms of the original plea agreement. But on my client's behalf, I requested that transcript and wanted to make sure that we had an opportunity to review that if it was reasonably possible.

Likewise, Jenkins's new counsel withdrew a request to continue the hearing because "the transcript is not going to change the State's position about going

---

[3] The court reporter had not finished the transcript at the time of the final sentencing as she had passed away.

along with this plea agreement, and obviously the court has gone along with the plea agreement." Referencing the court's decision to not continue the final sentencing hearing and her counsel's statements, Jenkins told the final sentencing court, "I don't know what he's just talking about, but that wasn't part of me. You already said you're not going to continue it. That's the only thing. I mean, I don't have to have a new public defender, no. That's fine."

At no time did Jenkins ever request to withdraw her pleas. And, at this final sentencing hearing, the plea agreement between the State and Jenkins was considered and the final sentencing court followed the agreement[4] contained in Jenkins's petition to plead guilty. Following the sentencing, Jenkins appealed, cloaking her issue as involving the sentencing process.[5]

**Good Cause to Appeal.**

We first address the State's request that we dismiss this appeal. The State winnows Jenkins's claim to one of "good cause" because the court had confusion over the application of rule 2.10 to the plea agreement—an issue the State contends involves the guilty pleas themselves rather than sentencing. Jenkins clarifies that even though the appeal is "based on a guilty plea," she is appealing "from a defect in her sentencing procedure; *i.e.*, whether or not she had the right

---

[4] The court ordered confinement to the Iowa Department of Corrections for a term of one year, running the sentences for the two counts concurrently, along with another matter that involved a four-year sentence. The other three counts charged were dismissed. The sentencing court suspended the $430 fine.
[5] We note the request to withdraw her guilty pleas was never formally made before the district court. And as much as Jenkins is challenging her guilty pleas, she has not preserved error because she never moved in arrest of judgment. *See* Iowa R. Crim. P. 2.24(3)(a).

to withdraw her guilty plea after the [d]istrict [c]ourt's *de facto* rejection[6] of it [in the initial sentencing hearing]." Because she appeals the sentencing procedures, she contends she established the statutorily required "good cause." It is Jenkins's burden to establish good cause to pursue an appeal of her conviction after pleading guilty. *See* Iowa Code § 814.6(1)(a)(3) (2021); *see also State v. Damme*, 944 N.W.2d 98, 104–05 (Iowa 2020) (finding good cause where the challenge is only to the sentence imposed and not the guilty plea or resulting conviction).

Thus, we start with Iowa Code section 814.6(1)(a)(3) as it applies:

> 1. Right of appeal is granted the defendant from:
> (a) A final judgment of sentence, except in the following cases:
> . . . .
> (3) A conviction where the defendant has pled guilty. This subparagraph does not apply to a guilty plea for a class "A" felony or in a case where the defendant establishes good cause.

*Damme* interpreted "good cause" in this code section as meaning a "legally sufficient reason." 944 N.W.2d at 104–05. And as *State v. Boldon* teaches, "what constitute[s] a legally sufficient reason [for good cause] [is] context-specific." 954 N.W.2d 62, 69 (Iowa 2021), *declined to follow on other grounds in State v. Patten*, ___ N.W.2d ___, ___, 2022 WL 12104322, at *3 (Iowa 2022). By definition, a legally sufficient reason is a reason that would allow a court to provide some relief. *State v. Treptow*, 960 N.W.2d 98, 109 (Iowa 2021) (finding that the failure to move in arrest of judgment precluded a challenge over the guilty plea). Here, the court

---

[6] While Jenkins argues the court's action in the initial sentencing hearing was a de facto rejection of her guilty pleas, the court order accepting the pleas was never set aside, and Jenkins provides no legal analysis supporting this argument. *See Baker v. City of Iowa City*, 750 N.W.2d 93, 102–03 (Iowa 2008) (finding a party's failure to support conclusory statements with legal authority and argument requires the appellate court to assume a partisan role of advocacy, which we will not do).

formally accepted the plea agreement and then at sentencing followed it without reservation or changes. Thus, Jenkins has no remedy because she got what she bargained for and she has not established good cause to appeal. *See Damme*, 944 N.W.2d at 105; *State v. McCarroll,* No. 20-0641, 2021 WL 4592616, at *2 (Iowa Ct. App. Oct. 6, 2021) (dismissing appeal on defendant's challenge to a sentence imposed that was agreed to in the plea bargain for failure to establish good cause). Here, no one disputes that the sentence imposed was the same as that agreed upon by the parties,[7] so Jenkins has not advanced a legally sufficient reason to appeal as a matter of right. *See Treptow*, 960 N.W.2d at 109. We are without jurisdiction to hear the appeal. *Id.* at 110. The appeal must be dismissed.

**APPEAL DISMISSED.**

---

[7] Jenkins admits in her appellate brief that "the judge at the [final sentencing hearing] had already imposed on Ms. Jenkins the sentence envisioned by the April 22, 2021, plea agreement."